Eric K. Jenkins, 10783
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City UT 84111
Telephone: (801) 323-5000
Eric.Jenkins@chrisjen.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MIKE H. and DENISE H., <br><br> Plaintiffs, <br><br> vs. <br><br> CIGNA BEHAVIORAL HEALTH, INC and the FEDERAL EXPRESS SELF-FUNDED MEDICAL PLAN, <br><br> Defendants. | **COMPLAINT** <br><br> Case No. <br><br> Judge |

## INTRODUCTION

This is an action to recover employee-welfare benefits pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") against the Defendants Cigna Behavioral Health, Inc. ("Cigna") and the Federal Express Self-Funded Medical Plan, which refused to pay for medically necessary healthcare.

## PARTIES AND JURISDICTION

1. Plaintiffs Mike and Denise H. are natural persons residing in Matawan, New Jersey. At all times relevant, Mike and Denise H. were the custodial parents of Stephen H. In 2013, Mike H. was a participant in a group health benefit plan ("the Plan") sponsored by his

employer FedEx. The administrator for the mental health and substance abuse portions of the plan is Cigna. Stephen H. is a beneficiary of the plan.

2. Defendant Cigna is a foreign corporation that is registered and doing business in Utah.

3. The Federal Express ("FedEx") self-funded medical plan is a self-funded medical plan sponsored by FedEx for the benefit of its employees.

4. This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

5. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) because Stephen's treatment was provided in Utah, communications during the pre-litigation review process took place between the Plaintiffs' agent and Defendants in the State of Utah, and the breaches of ERISA and the Plan occurred in the State of Utah. Moreover, based on ERISA's nationwide service of process provision and 28 U.S.C. § 1391, jurisdiction and venue are appropriate in the District of Utah.

## BACKGROUND FACTS

6. Stephen has struggled with serious behavioral and emotional problems since childhood.

7. He has been diagnosed with Attention-Deficit/Hyperactivity Disorder as well as Oppositional Defiant Disorder.

8. He frequently engaged in physical altercations with others his age and struggled with other anger and violence issues.

9. As he approached and entered the ninth grade he frequently skipped school. He acted out at home by punching holes in the walls and stabbing the walls with knives. He would stay out all night and was openly defiant of his parents.

10. Stephen began smoking marijuana when he was 12. By 8th grade he was getting high four to five times a week. He also smoked cigarettes, drank alcohol approximately three times a week, and experimented with moon seeds, cocaine, and ecstasy.

11. Stephen's parents did not know how to help him. His behavior was becoming more aggressive and they feared that he was becoming a danger to his family and those around him.

12. Stephen attended therapy for three years, but he continued to grow progressively more angry and violent.

13. Stephen's violent outbursts and erratic behavior were significantly impacting the family's home life and his performance at school.

14. When he was in ninth grade, Plaintiffs placed Stephen in a treatment facility called Inspirations Youth in Florida for two months. Unfortunately, the treatment he received at Inspirations did not curb his progressively negative behavior.

15. A counselor at Inspirations suggested that Stephen should not return to Inspirations after his two months of treatment. The counselor suggested that the program was not helping Stephen because he was not engaged and was "coasting."

16. Plaintiffs sought help for Stephen at Dobson Education Services, an organization that specializes in matching troubled youth with effective therapeutic programs. Ruby Laufer

with Dobson recommended WinGate Wilderness Therapy because there was no way to "coast" through a wilderness therapy program.

17. Plaintiffs sent Stephen to WinGate Wilderness therapy from February 25, 2013 through May 6, 2013. WinGate is licensed by the State of Utah as an outdoor youth treatment program.

18. Stephen received mental health, behavior health, and substance abuse treatment while at WinGate. It included treatment from a licensed clinical psychologist and therapists.

19. At WinGate, Stephen participated in weekly individual and group therapy sessions and daily psychoeducational and process groups. He was also immersed in wilderness principles and experiences as a means of introducing new philosophies and strategies to assist him in overcoming his destructive tendencies.

20. Treatment of this type was essential for Stephen because other treatments had been ineffective and he was becoming increasingly hostile. Plaintiffs believed that his future would be irreparably damaged if they could not find a treatment option that helped turn Stephen around.

21. Stephen successfully graduated from WinGate after approximately nine weeks.

22. Stephen's time at WinGate was very successful. His parents noticed an immediate and significant change in his destructive behaviors.

23. Plaintiffs requested coverage for the substance abuse treatment and psychological and behavioral counseling that Stephen received at WinGate.

24. Defendants have continually denied coverage for the treatment that Stephen received at Wingate.

## THE PLAN REQUIREMENTS AND DEFENDANTS' DENIAL

25. The Plan provides coverage for mental health and substance abuse care including individual therapy, inpatient hospitalization and day treatment.

26. The Plan covers medically necessary services for treatment of mental health and substance abuse.

27. The Plan defines "medically necessary care" as care that is:

- Commonly and customarily recognized by the most relevant medical specialists (such as cardiology, orthopedics, etc.) with respect to the standards of good practice as appropriate and effective in the identification of treatment of a diagnosed illness or injury.

- Consistent with the symptoms upon which the diagnosis and treatment of the illness or injury is based.

- The appropriate supply or level of service that can be safely provided to a patient and with regard to a person who is in an inpatient, it must mean that the patient's illness requires that the service or supply cannot be safely provided to that person on an outpatient basis.

- Provided by a practitioner, hospital, or covered provider.

- Approved by the U.S. Food and Drug Administration (FDA), if the drug or supply is appropriate for review by the FDA.

- Not experimental or investigational in nature.

- Not scholastic, educational or developmental in nature or intended for vocational training.

- Not provided primarily as a convenience to the patient, practitioner, hospital or covered provider.

- Not provided primarily for the purpose of medical research or other research.

28. The Plan does not exclude coverage for outdoor youth programs.

29. In denying Plaintiffs' claim for coverage, Defendants initially relied on medical necessity criteria for "residential substance use disorders treatment." However, WinGate is not a residential treatment program. Residential treatment programs and outdoor youth programs are distinctly different entities under Utah law.

30. Defendants' final denial of Plaintiffs' claim indicated that Stephen's treatment at WinGate was not medically necessary because he did not have a severe psychiatric disorder, he had not attempted and failed at multiple less restrictive settings in the past, and his symptoms could have been addressed in a less restrictive setting.

31. Defendants' denial in this regard ignored the significant harmful impact that Stephen's behavior and drug use had on his family and himself. His mental conditions and addictions were severely restricting his ability to progress at a time in his life when progression is essential. He had already tried years of therapy and other treatments to no avail.

32. Further, Defendants' denial of coverage ignored the requirements of the Mental Health Parity Act, which requires that group health plans with more than 51 employees provide mental health and substance abuse treatment benefits that are equal to a plan's coverage for medical and surgical benefits.

33. Finally, Defendants' denial of coverage ignored the express requirements of the Plan's language.

## PRELITIGATION APPEALS PROCESS

34. Defendants denied Plaintiffs' request for coverage for Stephen's treatment at WinGate from February 25, 2013 through May 6, 2013.

35. Plaintiffs made a level 1 appeal request that was denied on August 7, 2013.

36. On September 30, 2013, Plaintiffs initiated a level 2 appeal. This appeal was denied on November 1, 2013.

37. Plaintiff initiated an Independent Review Organization review of Defendants' denial on January 23, 2014. This final appeal was denied on February 27, 2014.

## **COUNT 1**

38. Plaintiffs reallege all paragraphs as if set-forth herein.

39. ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan fiduciary such as the Defendants, namely that the insurer "discharge [it's] duties in respect to claims processing solely in the interest of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

40. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials. 29 U.S.C. § 1133(2).

41. Defendants breached their fiduciary duties to Plaintiffs when they failed to comply with their obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in Stephen and Plaintiffs' interests and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of Stephen's claims.

42. Defendants also failed to provide parity with mental health and substance abuse treatment benefits that are equal to a plan's coverage for medical and surgical benefits.

43. The actions of Defendants in failing to provide coverage for Stephen's medically necessary treatment at WinGate are a violation of the terms of the Plan and ERISA.

44. This Court must conduct a plenary proceeding in evaluating Defendants' denial of benefits.

45. The actions of the Defendants, as outlined above, were wrongful under both the Plan terms and ERISA.

46. Defendants must reimburse Plaintiffs or pay on their behalf an amount to be determined at trial, but no less than $28,045.

## Count II
### Attorneys' Fees and Costs.

47. Plaintiffs reallege all paragraphs as if set-forth herein.

48. Defendants unlawfully refused to pay benefits, and as a result of their conduct Plaintiffs are entitled to recover under 19 U.S.C. § 1132(g), cots of this litigation, including reasonable attorney's fees, costs and interest at the statutory rate on all owed benefits.

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment against the Defendants in an amount of not less than $28,045, the total unpaid amount that is owed for Stephen's medically necessary treatment at WinGate, plus pre and post-judgment interest to the date of payment;

2. Attorney fees and costs incurred pursuant to 19 U.S.C. § 1132(g); and

3. For such further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 24th day of February, 2017.

CHRISTENSEN & JENSEN, P.C.

*/s/ Eric K. Jenkins*
Eric K. Jenkins
*Attorneys for Plaintiffs*